RECEIVED
JUN 21 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

SHAWN DOUGLAS
PAIGE BROWN

CIVIL ACTION NO. 04-1144

VS.

GENERAL MOTORS CORP.

MAGISTRATE JUDGE METHVIN
BY CONSENT OF THE PARTIES

## MEMORANDUM RULING
## ON MOTION FOR PARTIAL SUMMARY JUDGMENT
*(Rec. Doc. 21)*

Before the court is the Motion for Partial Summary Judgment filed by defendant General Motors Corporation ("GM"). Plaintiffs Shawn Douglas and Paige Brown filed an opposition and GM filed a supplemental memorandum in support.[1] For the following reasons, the motion is **GRANTED**.

### *Facts and Contentions*

The following facts are undisputed: On June 15, 2003, William Douglas had lunch with his son at a restaurant, returned home, parked his 1997 Cadillac Seville in his carport, and remained in the vehicle with the engine running. Shortly thereafter, an engine fire occurred, resulting in Mr. Douglas's death from smoke inhalation.

Plaintiffs, the decedent's surviving children, filed the instant wrongful death and survival action under the Louisiana Products Liability Act, LSA-R.S. 9:2800.51 *et seq.*, claiming that the engine fire was caused by defects in the Cadillac, including defective fuel hoses, a defective firewall between the engine and passenger compartments, and a failure to warn of such defects.

---

[1] Rec. Docs. 31 and 41.

Plaintiffs contend that the decedent may have fallen asleep while waiting for an afternoon rainstorm to subside.[2]

Defendant denies any defects in the vehicle, and alleges that the decedent was intoxicated when he returned home; that after he parked his car, his right foot remained pressed on the accelerator placing the engine in full throttle; and that the ensuing engine fire occurred not due to defects in the vehicle, but due to the abuse and/or misuse of the vehicle by the decedent.[3]

### *Issue Presented*

GM seeks a partial summary judgment holding that the decedent was "operating a motor vehicle" within the meaning of La. R.S. 9:2798.4.

## **FINDINGS AND CONCLUSIONS**

### *I. Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56; Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir.1994)(*en banc*). An issue is material if its resolution could affect the outcome of the action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a fact issue has been created, the court must view the facts and the inferences in the light most favorable to the nonmoving party. Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir.1999).

---

[2] Rec. Doc. 1.

[3] Rec. Doc. 18.

The standard for summary judgment mirrors that for judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to evidence which is uncontradicted and unimpeached, regardless of which party it favors. Id. at 151, 120 S.Ct. 2097.

## II. La. R.S. 9:2798.4

Federal courts sitting in diversity apply state substantive law and federal procedural law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Louisiana law governs the instant civil action. Defendants seek partial summary judgment under LSA-R.S. 9:2798.4, which grants immunity from liability for injuries sustained by a person who operates a vehicle while intoxicated. The statute states in pertinent part:

> **§2798.4. Immunity from liability; injuries sustained by persons driving under the influence of alcoholic beverages or drugs**
>
> A. Neither the state, a state agency, or a political subdivision of the state nor any person shall be liable for damages, including those available under Civil Code Article 2315.1 or 2315.2, for injury, death, or loss of the operator of a motor vehicle, aircraft, watercraft, or vessel who:
>
>> (1) Was operating a motor vehicle, aircraft, watercraft, or vessel while his blood alcohol concentration of 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
>
> * * *
>
> B. The provisions of this Section shall not apply unless:
>
> (1) The operator is found to be in excess of twenty-five percent negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S.

14:98(A)(1)(b), or the operator is found to be in excess of twenty-five percent negligent as a result of being under the influence of a controlled dangerous substance described in R.S. 14:98(A)(1)(c); and

(2) This negligence was a contributing factor causing the damage.

GM does not seek summary judgment holding that all of the factors of La. R.S. 9:2798.4 are satisfied in this case. Rather, the sole issue presented is whether GM is entitled to summary judgment holding that William Douglas was "operating a motor vehicle" at the time of his death. GM contends that the term "operating a motor vehicle" is broad enough to encompass the facts presented, even if the decedent was asleep or passed out in the vehicle at the time of the engine fire.

A review of the jurisprudence shows that there are no cases defining "operating a motor vehicle" under La. R.S. 9:2798.4. However, there is a great deal of jurisprudence defining the identical term under other Louisiana statutory provisions, particularly those relating to OWI and DWI offenses. In support of its motion, GM cites Duplechain v. Old Hickory Casualty Ins. Co., 594 So. 2d 995 (La. App. 3rd Cir. 1992). In Duplechain, an intoxicated driver left his vehicle straddling the center line of a two lane highway at night with one working headlight and the engine running. The court concluded that, although the driver was standing outside the vehicle at the time of the ensuing accident, he was nevertheless "operating a motor vehicle" within the meaning of La. C.C. art. 2315.4, which allows exemplary damages for injuries caused by an

intoxicated defendant who engages in wanton and reckless disregard of the safety of others.[4] The court reasoned as follows:

> * * * Mason was certainly exercising control of the vehicle when he parked it in such a dangerous position, and he maintained that control in choosing to perpetuate the hazard by not removing the vehicle from the traveled portion of the roadway. We have little trouble concluding that Mason's actions amount to the operation of a vehicle with a wanton and reckless disregard for the rights and safety of others.

Duplechain, 594 So. 2d at 998.

GM also cites Neild v. State of Louisiana, Dept. of Public Safety, 301 So. 2d 410 (La. 2d Cir. 1974). Neild was found sleeping in her vehicle, which was parked on a street with the engine running and the gear shift in "drive." She refused to take a breath test and later filed suit for an injunction to prevent the state from suspending her driver's license. The trial court issued an injunction midway through an evidentiary hearing after both of the eyewitnesses – a private security guard and a police officer – testified that they had not observed plaintiff in the act of driving a motor vehicle on a public thoroughfare. The appellate court reversed and remanded the case "for an orderly completion of the trial." Id, 301 So. 2d at 411. The court held that LSA-R.S. 32:661 required only that a police officer have "reasonable grounds" to believe that defendant had been driving, or had physical control of a vehicle on a public highway in an intoxicated condition – proof was not required. The court also noted that the definition of "operating a vehicle" was broader than Neild's interpretation:

---

[4] LSA-C.C. Art. 2315.4 provides as follows:
**Art. 2315.4. Additional damages; intoxicated defendant**
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.

> * * * For example, the first sentence in 32:661, *supra*, provides, 'Any person who operates a motor vehicle upon the public highways . . .' As related to this question, we hold the arresting officer must have reasonable grounds to believe the person was operating the vehicle upon the highway, *which encompasses either being the driver or controlling the vehicle to such a degree as to constitute operation.*

Id, 301 So. 2d at 413 (emphasis supplied).

Plaintiffs maintain that the decedent was not operating his vehicle at the time of his death because "William Douglas was sitting in his parked vehicle in his carport at his residence for a short period of time before the vehicle caught fire."[5] Plaintiffs rely on State v. Brister 514 So.2d 205, 207 (La.App. 3 Cir.1987), for the proposition that simply sitting in a vehicle does not make the person in question an operator. Brister was convicted of DWI after police officers found him sitting in the driver's seat of a parked vehicle with the headlights on, but without the engine running. The car moved forward slightly when Brister turned to see the police officers. The appellate court reversed Brister's conviction on these facts. The court first noted that the term "operate" is broad:

> The term "operate" includes merely controlling the vehicle. *Doing anything with regard to the mechanism of a motor vehicle, whether it has any effect on the engine or not, is also included in the term "operate."* Similarly, it has been held that a person begins to operate the instant he begins to manipulate the machinery of the vehicle for the purpose of putting the car in motion, and that "operates" refers to the actual physical handling of the controls of a vehicle. See, 93 A.L.R.3d 7, 16-17 (1979).

Brister, 514 So.2d at 207 (emphasis supplied). Nonetheless, as in most of the other cases involving prosecutions for OWI or DWI, the deciding factor was the absence of evidence that the defendant was *or had been* operating the vehicle in question. The court stated:

---

[5] Rec. Doc. 31 at p. 4.

> The mere presence of defendant in the car while it was in motion does not make him the operator of the vehicle. The defendant must have been exercising some control or manipulation over the vehicle, such as steering or braking. No evidence was introduced that defendant released the brake, causing the car to roll forward, or that he was steering the car. Officer Rachal theorized that defendant's movement in his seat started the car down the incline. It is a reasonable hypothesis of innocence, and the most plausible inference from the evidence, that the car started and stopped on its own without defendant exerting any control over the vehicle. The trial court erred in finding that defendant "operated" the car. Defendant's conviction under LSA-R.S. 14:98 is reversed.

Brister, 514 So.2d at 207-208.

A similar result occurred in State v. Rossi, 734 So.2d 102 (La.App.5 Cir. 1999), another case in which a DWI conviction was overturned on appeal. In Rossi, the court noted that "operating a vehicle" required proof that the defendant had "exercised some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion.[6] The court concluded that the evidence was insufficient to meet this standard:

> In the present case, defendant was found sitting in the driver's seat of his car while parked in front of his house. The car was running, but no evidence was presented to indicate that the defendant was in the process of operating the vehicle. This case is factually similar to City of Bastrop v. Paxton, 457 So.2d 168 (La.App. 2nd Cir.1984) in which the Second Circuit reversed the defendant's conviction holding that the evidence was not sufficient to convict him of "operating" a motor vehicle while intoxicated. The defendant, while intoxicated, was behind the wheel of a parked car with its motor running and the brake lights flashed "for a second." Id. at 170. The total circumstances, even when viewed most favorable toward the prosecution, simply do not show sufficient physical handling of the controls of the car by Paxton to convict him of "operating" the vehicle. Id. Similarly, the evidence in the present case is not sufficient to prove that the defendant violated LSA-R.S. 14:98. Therefore, the writ should be granted and the judgment of the trial court reversed.

---

[6] State v. Rossi, 734 So.2d at 102-103.*citing* State v. Smith, 93-1490 (La.App. 1st Cir. 6/24/94), 638 So.2d 1212; State v. Brister, 514 So.2d 205 (La.App. 3rd Cir.1987).

Rossi, 734 So.2d at 102-103.[7]

The instant case is factually distinguishable from the cases cited by plaintiffs. Here, there is no dispute that Mr. Douglas had been driving the Cadillac, that he parked it, and that he remained in the car with the engine running. Plaintiffs allege in their original petition that "[o]n the date of the accident, decedent, William Douglas, *was operating his 1997 Cadillac* which was designed, manufactured and sold by defendant, General Motors Corporation." (Original Petition, Rec. Doc. 1 at Paragraph 3). Plaintiffs also allege that "[a]fter having lunch with his son at a local restaurant, *decedent drove his vehicle from the restaurant to his home* near Franklin, Louisiana", and that "[d]ecedent parked the accident vehicle under his carport and remained in the vehicle with the engine running" Id.

The uncontested facts therefore constitute the requisite evidence that Mr. Douglas "was in the process of operating the vehicle." Rossi, 734 So.2d at 102. Unlike the DWI and OWI cases cited by plaintiffs, the evidence here is not limited to what a police officer witnessed after a vehicle had already come to a stop. Here, there is no dispute that Mr. Douglas drove to a restaurant, had lunch with his son, drove home, parked the vehicle in the carport, left the engine running, and either passed out or fell asleep. Thus, Mr. Douglas had physical and operational control of the vehicle prior to his death. This control did not cease simply because the decedent parked his car and fell asleep, or because the vehicle was not in motion at the time of his death. Just as in Neild, it is only necessary to establish that the person "*was operating* the vehicle upon

---

[7] Plaintiff also relies on State v. Mulvihill, 03-0691 (La. App. 5th Cir. 10/28/03). In Mulvihill, the defendant was sleeping in the driver's seat of his vehicle, with the engine running, while it was parked in a parking lot. The trial court granted the defendant's motion to quash the bill of information charging him with OWI because there was no proof that the vehicle was in gear. The appellate court reversed and remanded the case, concluding that a determination of whether or not the defendant's actions amounted to operating a vehicle was a factual matter to be determined by the jury. This case does not assist in the determination of the definition for "operating a vehicle."

the highway, which encompasses either being the driver or controlling the vehicle to such a degree as to constitute operation." Neild, 301 So. 2d at 413 (emphasis supplied). In the instant case, there is no dispute that Mr. Douglas had been operating his vehicle upon the highways, and that he continued to have exclusive control over the vehicle at all relevant times.

Considering this, the court concludes that there are no genuine issues of material fact and that defendant is entitled to partial summary judgment establishing that the decedent, William Douglas, was "operating a motor vehicle" within the meaning of La. R.S. 9:2798.4 at the time of his death.

**IT IS THEREFORE ORDERED** that defendant's Motion for Partial Summary Judgment is **GRANTED.**

Signed at Lafayette, Louisiana on June 20, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140     FAX 593-5155